865 F.2d 1269
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Clifford WALKER, Petitioner,
v.
BROWN BADGETT, INC.; Old Republic Insurance Companies;
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
 No. 88-3187.
 United States Court of Appeals, Sixth Circuit.
 Jan. 6, 1989.
 
 Before KENNEDY, RALPH B. GUY, Jr., and RYAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Clifford Walker appeals the order of the Benefits Review Board (Board) affirming the decision on remand of the administrative law judge (ALJ) denying benefits under the Black Lung Benefits Act (Act), 30 U.S.C. Sec. 901, et seq. Walker claims that the Board erred, first, in finding that the opinion of Dr. Thomas Gallo is not contrary and hostile to the Act and, second, in failing to evaluate his entitlement to benefits pursuant to 20 C.F.R. Sec. 410.490 regulations. He also contends that the Board's order is not supported by substantial evidence, is irrational, and is not in accordance with law.
 
 
 2
 Walker, a sixty-five year old male with a seventh grade education, filed a claim for black lung benefits under the Act in 1978 after working approximately thirty-one years in the coal industry. He spent twenty-three years working as a mechanic in an underground coal mine. During the remaining eight years, he was engaged in surface mining. He spent the last four of the eight years working as a foreman for Brown Badgett, Inc. (Badgett). Walker's benefits claim form stated retirement as his reason for leaving work on December 30, 1977, at age fifty-five.
 
 
 3
 In his original decision awarding benefits, the ALJ disregarded Dr. Gallo's opinion as hostile to the Act. Consequently, the ALJ found that Walker's x-ray and medical evidence was sufficient to invoke the interim presumption of total disability under 20 C.F.R. Sec. 727.203(a)(1) and (4), and that the evidence was insufficient to establish rebuttal pursuant to 20 C.F.R. Sec. 727.203(b). Badgett, the employer, appealed. The Board determined that Dr. Gallo's testimony was not impermissibly hostile to the Act and that the ALJ neglected to consider the entire basis for Dr. Gallo's report. Therefore, the Board remanded the case to the ALJ, with instructions to reconsider and properly weigh Dr. Gallo's opinion with other medical evidence for the purpose of reassessing the employer's rebuttal evidence.
 
 
 4
 On remand, the ALJ determined that the employer had met its burden of rebuttal pursuant to 20 C.F.R. Sec. 727.203(b)(2) and (3) and denied benefits. This time Walker appealed to the Board, claiming first, that the Board erroneously found that Dr. Gallo's opinion was not hostile to the Act and, second, that, absent Dr. Gallo's opinion, the ALJ's finding of rebuttal on remand was not supported by substantial evidence. The Board declined to address Walker's contention that it exceeded its scope of review in its original finding that Dr. Gallo's testimony was not contrary to the Act because Walker failed to file a timely motion for reconsideration pursuant to 20 C.F.R. Sec. 802.407(a). The Board then rejected Walker's argument that the employer's rebuttal evidence was insufficient because that argument was dependent upon his rejected argument that Dr. Gallo's testimony was impermissibly hostile to the Act. Finding no other issues before it, the Board affirmed the ALJ's finding of rebuttal pursuant to section 727.203(b)(2) and (3) and its concomitant denial of benefits.
 
 I.
 
 5
 Our review of this case has a limited scope. We must "scrutinize[ ] Board decisions for errors of law and for adherence to the statutory standard governing the Board's review of the administrative law judge's factual determinations." Director, OWCP v. Rowe, 710 F.2d 251, 254 (6th Cir.1983) (citation omitted). Likewise, the Board is not authorized to engage in de novo review. Instead, it is limited to determining whether the ALJ's decision is free of errors of law and is supported by substantial evidence gleaned from the entire record. Id. See also Gibas v. Saginaw Mining Co., 748 F.2d 1112 (6th Cir.1984), cert. denied, 471 U.S. 1116 (1985).
 
 
 6
 On appeal, Walker first contends that the ALJ and the Board erred in finding that the opinion of Dr. Gallo is not contrary and hostile to the Act. In resolving this issue, we are guided by our findings in Adams v. Peabody Coal Co., 816 F.2d 1116 (6th Cir.1987). In Adams, the claimant appealed his denial of black lung benefits, in part, because of his contention that the ALJ wrongfully credited the deposition testimony of two physicians who lacked credibility, as a matter of law, because of their philosophy that simple pneumoconiosis does not produce a physical disability. The claimant argued that the testimony of the physicians should be discredited as contrary to the spirit of the Act.
 
 
 7
 We rejected claimant's argument, notwithstanding our recognition that the Board has previously held that " '[a] physician's belief that simple pneumoconiosis is never disabling may constitute grounds for rejecting his medical opinion as inconsistent with congressional intent and the spirit of the Act.' " Adams, 816 F.2d at 1119 (quoting Stephens v. Bethlehem Mines Corp., 8 BLR 1-350, 1-352 (1985)). We also noted that to reject a physician's testimony as hostile to the Act requires a determination that the physician has " 'foreclose[d] all possibility that simple pneumoconiosis can be totally disabling.' " Id. (quoting Butela v. United States Steel Corp., 8 BLR 1-48, 1-49 (1985)). Finally, we observed that even if a doctor believes that simple pneumoconiosis cannot be totally disabling, we are not automatically required to disregard his otherwise probative testimony regarding the existence or degree of a claimant's disability. Id.
 
 
 8
 The standard for evaluating the hostility of a physician's testimony is set forth in Stephens, 8 BLR at 1-352:
 
 
 9
 The administrative law judge should bear in mind that a physician can make a valid assessment as to the existence and extent of respiratory impairment, work capability, and/or the presence of pneumoconiosis despite the belief that simple pneumoconiosis can never be disabling. It is when the physician's predisposed belief forms the primary basis for his conclusion that the miner's pneumoconiosis is not totally disabling, or that any respiratory impairment which the miner has could not be due to pneumoconiosis, that the physician's opinion may be discredited due to improper bias.
 
 
 10
 (Citations omitted). We have explicitly expressed our adoption of this standard to determine when a doctor's medical philosophy requires an ALJ to disregard that doctor's medical evaluation. Adams, 816 F.2d at 1119 n. 1. Employing this standard in Adams, we determined that the deposition testimony of the physicians in question did not foreclose all possibility of total disability from simple pneumoconiosis. Therefore, the ALJ was free to consider their probative testimony regarding the degree of claimant's disability.
 
 
 11
 In the present case, the basis for claimant's contention that Dr. Gallo's testimony should be excluded as inconsistent with the Act, consists of the following deposition testimony:
 
 
 12
 Q. In your opinion, does simple pneumoconiosis, that being category 1, 2 or 3, produce any abnormality whatsoever on physical examination? Pneumoconiosis by itself without any--
 
 
 13
 A. Pneumoconiosis, per se, in a non-smoking miner, the most common thing in my experience I have found is no positive physical findings.
 
 
 14
 Q. With no positive physical findings, is it your opinion that simple pneumoconiosis, that is, category 1, 2 or 3, cannot produce an impairment for an individual?
 
 
 15
 A. No. That's not true. Physical findings are not associated with any particular impairment.
 
 
 16
 Q. When, in your opinion, if at all, can simple pneumoconiosis produce an impairment?
 
 
 17
 A. Well, more definite impairments--A definite impairment will be seen and even then it is mild and sometimes only slight in category 3.
 
 
 18
 Q. In your opinion, can simple pneumoconiosis ever be disabling?
 
 
 19
 A. Can simple pneumoconiosis in and of itself be disabling? Yes, sir. It's disabling to a coal miner who tries to get another job because he will not be hired with a positive history for coal workers' pneumoconiosis.
 
 
 20
 Q. Can it be functionally disabling?
 
 
 21
 A. Can it be functionally disabling?
 
 
 22
 Q. Yes.
 
 
 23
 A. The thing is, that you're talking about impairment versus disability. The thing is, is that simple pneumoconiosis, category 1, category 2, in and of themselves, unassociated with asthma, bronchitis or emphysema and other lung disease is not clinically disabling.
 
 
 24
 (App. 144-46).
 
 
 25
 Dr. Gallo's expressed opinion does not necessarily foreclose all possibility that simple pneumoconiosis can be disabling. Dr. Gallo does not state that simple pneumoconiosis can never be clinically disabling. Rather, his opinion can be regarded as a qualified opinion in the abstract because, in this case, there simply was no evidence of pneumoconiosis presented by x-ray or other physical or clinical tests. (App. 137-38). More importantly, even if Dr. Gallo's testimony reflected a view that simple pneumoconiosis can never be disabling, this would not mandate exclusion of his otherwise probative testimony regarding the existence or degree of Walker's disability. Adams, 816 F.2d at 1120.
 
 
 26
 The significance of Dr. Gallo's testimony is his conclusion that Walker was not disabled from a pulmonary standpoint or any other cause. The only qualification Dr. Gallo added to this conclusion concerned the need to make sure Walker's other systems including his cardiovascular system do not contraindicate heavy work. Thus, Dr. Gallo's conclusion that Walker was not disabled and was able to work was not predicated on his view that simple pneumoconiosis, in the absence of other maladies, is not clinically disabling. Rather, his conclusion was based on Walker's work, personal history, physical examination, and numerous clinical tests, including a pulmonary function test and a blood gas study. Moreover, Walker's contention that Dr. Gallo's conclusion that Walker did not have pneumoconiosis was impermissibly based solely on a negative x-ray is incorrect.
 
 
 27
 We conclude that the Board did not err in recognizing that the legal standard against which Dr. Gallo's testimony should have been measured would not have excluded his testimony. The Board then properly remanded the case to the ALJ to weigh Gallo's testimony against other evidence considered to determine whether the interim presumption was rebutted.
 
 II.
 
 28
 Walker's second argument is that his claim should have been evaluated pursuant to 20 C.F.R. Sec. 410.490. We reject this argument for two reasons. First, this issue is raised for the first time on appeal. Therefore, it is not properly before us. Boone Coal and Timber Co. v. Polan, 787 F.2d 1056 (6th Cir.1986). Second, even if this issue was properly before us, Walker would not prevail because our holding in Kyle v. Director, OWCP, 819 F.2d 139 (6th Cir.1987), cert. denied, 57 U.S.L.W. 3412 (U.S. Dec. 13, 1988), necessitates adjudication of a black lung benefits claim pursuant to 20 C.F.R. Sec. 410.490 only when the 20 C.F.R. Sec. 727.203 regulations concerning invocation of the interim presumption are more restrictive than their Part 410 counterparts. We have interpreted that to be when a miner has less than ten years of mining experience and is therefore unable to invoke the interim presumption of section 727.203(a). See Grant v. Director, OWCP, 857 F.2d 1121 (6th Cir.1988); Kyle, 819 F.2d 139; see also Youghiogheny and Ohio Coal Co. v. Milliken, No. 88-3213 (6th Cir. Dec. ----, 1988) (limiting Kyle to invocation of presumption and precluding its application to rebuttal).
 
 
 29
 Walker had over thirty-one years of coal mine employment and cannot claim that the Part 727 regulations regarding invocation of the presumption are more restrictive than those under Part 410 as applied to him. We have also noted that our holding in Kyle does not apply in the context of rebuttal. See Youghiogheny and Ohio Coal Co.; Warman v. Pittsburgh & Midway Coal Mining Co., 839 F.2d 257, 258 n. 1 (6th Cir.1988); Prater v. Hite Preparation Co., 829 F.2d 1363, 1366 n. 2 (6th Cir.1987); Kyle, 819 F.2d at 143-44; Ramey v. Kentland Elkhorn Coal Corp., 755 F.2d 485 (6th Cir.1985); see also, Pittston Coal Group v. Sebben, 57 U.S.L.W. 4029 (U.S. Dec. 6, 1988) (implicitly affirming Kyle's holding that the 20 C.F.R. Part 727 regulations governing invocation of the presumption of pneumoconiosis are more restrictive than their Part 410 counterparts, in contravention of 30 U.S.C. Sec. 902(f)(2), but explicitly declining to assess the validity of 20 C.F.R. Part 727 rebuttal regulations notwithstanding the fact that they permit rebuttal of more elements of statutory entitlement than their Part 410 counterparts).
 
 III.
 
 30
 Walker's final argument, that the Board's order is not supported by substantial evidence, is irrational, and not in accordance with law, also fails. Substantial evidence has been defined as "more than a mere scintilla" and as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). When the ALJ, on remand, evaluated all of the medical evidence including Dr. Gallo's, the basis for the evidence, and the credentials of those offering it, he determined that the interim presumption was rebutted.
 
 
 31
 Specifically, the ALJ originally found the interim presumption of section 727.203(a)(1) invoked by interpreting six positive x-ray readings and six negative x-ray readings in favor of the claimant. Qualifying ventilatory studies and blood gas studies were insufficient to invoke the presumption under section 727.203(a)(2) or (3). The ALJ also found the presumption invoked, pursuant to 20 C.F.R. Sec. 727.203(a)(4), on the basis of the following physicians' reports:
 
 
 32
 In 1974, Dr. William West concluded, on the basis of a physical examination and a chest x-ray, that Walker had totally disabling pneumoconiosis. However, no laboratory tests were performed.
 
 
 33
 In 1978, Dr. Neil Calhoun, on the basis of a history and physical examination, a chest x-ray, and another physician's ventilatory studies, concluded that Walker had crippling, disabling coal miner's pneumoconiosis, category two.
 
 
 34
 Dr. Valentio Simpao, that same year, based on physical examination and blood gas and ventilatory studies, diagnosed Walker as having pulmonary fibrosis with chronic bronchitis and pulmonary emphysema.
 
 
 35
 In January 1979, based on examination, laboratory tests, and review of medical reports, Dr. Thomas Gallo concluded that Walker did not have a clinically significant respiratory impairment and that, barring significant cardiovascular problems, he could perform very heavy work.
 
 
 36
 In finding Dr. Gallo's report sufficient to rebut the presumption, pursuant to 20 C.F.R. Sec. 727.203(b)(2) and (3), the ALJ, on remand, elaborated on the basis for his decision. He noted that Dr. Gallo examined Walker in 1979 and found "suspect arteriosclerotic heart disease with angina pectoris" and possible emphysema. (App. 6). Dr. Gallo performed work and medical histories, a pulmonary function test, blood gas study, and interpreted a chest x-ray. He noted Walker's smoking history of a pack of cigarettes daily for approximately forty years. (App. 107). The ALJ also considered Dr. Gallo's testimony from three depositions (App. 97, 134, 155), in which he attributed Walker's complaints to a circulatory disorder and noted Walker had no physical restriction from a pulmonary standpoint. The ALJ accorded Dr. Gallo's testimony more weight than the other physicians based on Dr. Gallo's fully "documented," "well reasoned" assessment of Walker's disability and its etiology, and the fact that Dr. Gallo is board certified in internal medicine with a subspeciality in pulmonary disease.
 
 
 37
 The ALJ noted that Dr. Calhoun, a general practitioner, found that Walker was a pulmonary cripple based primarily on ventilatory studies performed by a pathologist. Those ventilatory studies were subsequently invalidated, due to sub-optimal effort by Walker during testing, by a physician board certified in internal medicine with a subspecialty in pulmonary disease. Therefore Dr. Calhoun's and the pathologist's testimony was given less weight than the testimony of Dr. Gallo and the physician who invalidated the ventilatory studies. Similarly, the ALJ found Dr. West's "equivocal" testimony to be flawed because no objective tests were performed to assess the degree of Walker's disability and because he failed to consider Walker's smoking history in assessing his pulmonary problem. Lastly, the ALJ found Dr. Simpao's testimony too equivocal to overcome the proffered rebuttal evidence. Dr. Simpao based his diagnosis on a pulmonary function study reflecting only borderline evidence of mild airway obstruction with no restrictive component. Moreover, the ALJ deemed Dr. Simpao's diagnosis incongruous with the normal blood gas studies.
 
 
 38
 Walker also contends that Dr. Gallo's conclusion that Walker did not suffer from totally disabling pneumoconiosis is insufficient to rebut the interim presumption under section 727.203(b). Under section 727.203(b)(2), rebuttal is possible by establishing through relevant evidence that a claimant is able to perform either his usual coal mine work or comparable and gainful work. Dr. Gallo concluded that Walker could perform very heavy work with no physical limitations from a pulmonary standpoint, provided his other systems, like his cardiovascular system, were adequate. (App. 138).
 
 
 39
 Walker correctly notes that in York v. Benefits Review Board, 819 F.2d 134 (6th Cir.1987), we noted that all of a claimant's disabilities in addition to pneumoconiosis must be considered for purposes of rebuttal under section 727.203(b)(2). We find that the ALJ did consider Walker's other disabilities before finding rebuttal. The ALJ noted Dr. Gallo's findings of suspected cardiovascular disease and suspected emphysema. Walker offered no evidence attesting to total disability based on factors other than respiratory ailments. Therefore, it is not as if the ALJ found Walker was disabled but found rebuttal because pneumoconiosis was not the sole cause of the total disability. Rather, there was no evidence of total disability based on pneumoconiosis alone or in combination with any other malady. Thus, York is unavailing to Walker's claim. In view of these facts, we find that the record provides substantial evidence to support the Board's decision.
 
 
 40
 AFFIRMED.