Darrell **WOLFE**, Plaintiff–Appellant,

v.

**SOCIAL SECURITY ADMINISTRATION,** Defendant–Appellee.

No. 01–5292.

United States Court of Appeals, Sixth Circuit.

July 23, 2002.

Before SILER and MOORE, Circuit Judges; and STAFFORD,* District Judge.

PER CURIAM.

Plaintiff Darrell Wolfe appeals the district court's grant of summary judgment in his appeal of the final decision of the Commissioner that he is not entitled to disability insurance benefits under the Social Security Act. We affirm.[1]

## I.

The district court concluded that the Administrative Law Judge's (ALJ) finding that Wolfe, though under some physical restrictions, was not disabled and therefore not entitled to benefits was supported by substantial evidence.

Wolfe filed an application for disability insurance benefits and supplemental social security income on May 17, 1994, alleging that he became disabled on January 15, 1993, due to back pain, heart problems and depression.[2] Wolfe's applications were denied and he sought judicial review.

Due to the limited nature of his attack on the ALJ's decision, it is not necessary to give a full recount of Wolfe's extensive medical history. Wolfe is a 43 year old

---

* The Honorable William Stafford, United States District Judge for the Northern District of Florida, sitting by designation.

1. On November 9, 2001, Jo Anne B. Barnhart became the Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Ms. Barnhart is substituted for the acting commission-

er, Larry G. Massanari, as the appellee in this action.

2. Wolfe does not challenge in this appeal the ALJ's failure to find that his alleged depression affected his ability to perform certain sedentary work as described by the vocational expert.

man with an eleventh-grade education, who has previously worked as a delivery driver, custodian, and car detailer. Though he raises an issue on appeal related to his heart condition, discussed *infra*, the principal impairment claimed by Wolfe is related to his back. He claims to have injured his back as a result of moving a piece of office furniture in 1987 and re-injured it in 1993. He has been examined by numerous orthopedic specialists, including Drs. Bell, Spann, Johnson, and Gagliardi. Dr. Spann noted that Wolfe appeared to have pain out of proportion to the examination and recommended only a rigid corset to alleviate his lower back pain. Dr. Johnson could not determine the cause of his alleged leg complaints. Dr. Gagliardi found only a mild disc bulging with no evidence of a herniated disc. Only Wolfe's primary care physician and his medical partner diagnosed total incapacity to work based on his back problems. Also, though the limitations found by Dr. Johnson, an internist, would support a legal finding of total disability, his medical findings were fairly similar to Dr. Gagliardi's findings.

The ALJ found Wolfe to be not entirely credible in his testimony as to the extent of his back problems. Accordingly, the ALJ found the restrictions recommended by Dr. Gagliardi, supported by the other orthopedic specialists that had examined him in the past, to be more persuasive than the primary care physicians' conclusions. Based on this medical finding and the testimony of the vocational expert, the ALJ found that while Wolfe may not be capable of performing a full range of work, within his physical restrictions he can perform several types of sedentary work available in the regional and national economies.

## II.

Judicial review of the Commissioner's decision is limited to determining whether the findings of fact are supported by "substantial evidence." The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir.1984); *see also* 42 U.S.C. § 405(g).

## III.

The issue before the court is whether the conclusion of the ALJ is supported by substantial evidence. Wolfe challenges that ruling on several grounds: (1) the ALJ failed to properly analyze the opinion of consultative examiner Dr. Jones; (2) the ALJ lacked sufficient justification for rejecting the opinions of the two treating physicians, Drs. Rylands and Otis; and (3) the opinion of Dr. Gagliardi as to Wolfe's limitations failed to consider all of his impairments in combination.

### A. Dr. Jones' opinion

■ The ALJ principally relied upon the opinion of Dr. Gagliardi, but he observed that Dr. Gagliardi's opinion "is also essentially consistent with the assessment made by Dr. Jones, another consultative physician." Wolfe argues that such opinions are not consistent, and Dr. Jones made a disabling assessment while Dr. Gagliardi found no disability. As a factual matter the technical differences between the two doctors' medical findings were minimal. Dr. Gagliardi found:

> [S]edentary activities [are] all that would be possible[;] this would include a job that allows sitting 7 hours per day, three hours uninterrupted and with the ability to change positions at will. Standing and walking would have to be kept to less than one hour per day. Stair climbing, excessive standing, squatting, bending, stooping, etc. would have to be avoided. Lifting up to 20 pounds on a

nonrepetitive basis involving less than one-third of an eight hour work day may be appropriate. Dr. Jones' medical assessment of Wolfe was that he had an ability to lift occasionally less than 10 pounds, stand and/or walk less than two hours, and sit with normal breaks less than six hours in an eight-hour workday. These assessments of physical abilities vary only slightly in the amount of weight that can be lifted and time that Wolfe is able to sit uninterrupted during a normal workday. In other words, their medical conclusions are "essentially" the same. The only difference is the vocational implication of the slightly different results, one of which the ALJ found more persuasive, but he observed that the medical findings of Dr. Jones were essentially supportive. This allegation of error is without merit and certainly casts no doubt on the substantial evidence supporting the ALJ's decision. In any event, as the Commissioner suggests, even were the findings not similar, such error would be harmless because substantial evidence exists to support the ALJ's finding in the form of Dr. Gagliardi's conclusions as the only orthopedic specialist.

**B. The treating physicians' opinions**

■ Dr. Rylands has been Wolfe's primary care physician since 1994. He concludes that "the major cause of this patient's disability and inability to work is his low back pain ... [and] this needs to be kept in mind when a disability evaluation is given. Any kind of lifting, bending, stooping, pushing, pulling will cause increasing back pain and more problems.... I would have to consider him completely disabled." Likewise, Dr. Otis, another member of Dr. Rylands' medical practice, recommends that Wolfe be limited to the lifting of five pounds occasionally; to sitting, standing, and walking a total of two hours and 45 minutes during an eight-hour day; and suggests an afternoon nap. In deciding to reject the conclusion of total disability by Drs. Rylands and Otis and accept the conclusion of Dr. Gagliardi, the ALJ specifically observed that "Dr. Rylands and Dr. Otis are general practitioners, while Dr. Gagliardi is an orthopedist." A specialist's opinion is generally entitled to more weight than a non-specialist. 20 C.F.R. § 404.1527(d)(5); see Adams v. Peabody Coal Co., 816 F.2d 1116, 1121 (6th Cir.1987) (per curiam ) (affirming ALJ determination to give more weight to conclusions of pulmonary expert over two treating physicians).

We give deference to medical opinions and diagnoses of treating physicians, but they are not entitled to complete deference, and thus are not controlling if they are inconsistent with other substantial evidence or unsupported by detailed objective criteria and documentation. 20 C.F.R. §§ 404.1527(d)(2)-(4), 416.927(d); Cutlip v. Sec'y of Health & Human Servs., 25 F.3d 284, 287 (6th Cir.1994). The ALJ found the specialist more persuasive than the treating physicians, and the specialist's conclusion more than satisfies as substantial evidence to support the ALJ's decision. In addition, the ALJ specifically found that "[Wolfe]'s statements concerning his impairments and their impact on his ability to work are not entirely credible in light of the reports of the treating and examining practitioners and the degree of medical treatment required." An incredibility finding for Wolfe undermines the treating physician's conclusions, as no doubt based at least in part upon his subjective reports to them. As for the credibility finding of Wolfe by the ALJ, this court may not review a determination of credibility: "It [i]s for the Secretary and his examiner, as the fact-finders, to pass upon the credibility of the witnesses and weigh and evaluate their testimony." Heston v. Comm'r of

*Soc. Sec.*, 245 F.3d 528, 536 (6th Cir.2001) (citations omitted).

### C. Impact of Wolfe's other impairments

Wolfe argues that reliance on Dr. Gagliardi's assessment is flawed because his report specifically notes that he only offers an orthopedic point of view, without taking into account any other medical conditions. Wolfe points to two medical conditions that Dr. Gagliardi was either unaware of or failed to consider: Wolfe's heart condition and arthritis in his lumbar spine.

There is no evidence that Wolfe's prior cardiac condition, treated by angioplasty in 1994, causes Wolfe any current physical impairment rendering him incapable of working in the sedentary jobs recommended by the vocational expert. He has not even visited his cardiologist in two years, and any occasional discomfort is treated with medication. Likewise, there is no evidence that Dr. Gagliardi failed to consider Wolfe's claimed diagnosis of osteoarthritis in evaluating his skeletal condition. In any event, neither of these allegations erode the significantly more than substantial evidence that supports the ALJ's finding.

AFFIRMED.